## MARVIN v. TROUT.

ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

Nos. 19, 20. Argued October 24, 25, 1905.—Decided November 13, 1905.

A certificate of the presiding judge of the state court made after the decision . to the effect that a Federal question was considered and decided, cannot confer jurisdiction on this court where the record does not otherwise show it to exist.

When the court makes such a certificate and orders it to be attached to and form part of the record itself, it may be sufficient to show that Federal questions were before the state court decided by it so that this court may pass upon those questions which are specified, but the statement that the plaintiff in error made a general contention that the statute involved and proceedings thereunder were an invasion of his private rights in violation of the Constitution is too vague to raise any Federal question.

The suppression of gambling is within the police power of the State, and it may make a judgment against those winning the money a lien upon property owned by another and in which the gambling is conducted with the knowledge and consent of the owner, and such a statute does not deprive the owner of his property without due process of law.

Such a statute does not deprive the owner of the property upon which the judgment is made a lien of his property without due process of law because it does not provide for trial by jury in the action to enforce the lien.

The State can give the whole or any part of the amount recoverable under such a statute to the informer.

THE plaintiff in error in these cases seeks to review the judgments of the Supreme Court of Ohio, affirming judgments recovered against him by the defendant in error in one of the Circuit Courts of Ohio. The two cases involve the same question, which relates to the validity of the sections of the statute of the State of Ohio in regard to gambling, known as sections 4270, 4273 and 4275 of the Revised Statutes of that State. The sections are set forth in the margin.[1]

---

[1] SEC. 4270. If any person, by playing at any game, or by means of any bet or wager, loses to any other person any sum of money or other thing of value, and pays or delivers the same, or any part thereof, to the winner, the person who so loses and pays, or delivers may, at any time within six months next after such loss and payment or delivery, sue for and recover

The defendant in error commenced these actions in the Court of Common Pleas of Hancock County, under section 4275, for the purpose of making certain judgments, recovered by her against other parties, a lien on the property of the plaintiff in error to the extent of those judgments. The defendant demurred to the petition in each case. One of the grounds of demurrer was that the petition showed a former judgment in favor of defendant for the same cause of action. The demurrers were sustained, and judgments to that effect were affirmed on error by the Circuit Court, but the Supreme Court reversed them and remanded the cases for further proceedings. 62 Ohio St. 132. The defendant then answered, and the cases went to trial in the Common Pleas, where plaintiff recovered judgments in her favor. On appeal in each case, to the Circuit Court of Hancock County, a trial was had *de novo,* which resulted in judgments in favor of plaintiff, 24 Ohio Circuit Court Rep. 333, which were affirmed, without any opinion, by the Supreme Court of Ohio. 70 Ohio St. 437. The defendant below has brought the cases here by writs of error.

The following are the facts upon which the questions arise:

---

the money or thing of value so lost, and paid or delivered, or any part thereof, from the winner thereof, with costs of suit, by civil action founded on this chapter, before any court of competent jurisdiction.

SEC. 4273. If the person losing such money or thing of value as provided in section forty-two hundred and seventy does not, within the time therein specified, without collusion or deceit, sue, and with effect prosecute, for the money or thing of value so lost and paid or delivered, any person may sue for and recover the same with costs of suit, against any winner as aforesaid, for the use of the person prosecuting the same.

SEC. 4275. The property, both real and personal, of a defendant, against whom a judgment is rendered under this chapter, either for fines, costs or to recover money, or other thing of value, lost or paid, shall be liable therefor, without exemption, and such judgment shall be a lien thereon until paid; if the owner of the building in which the money was lost knowingly permits it to be used for gaming purposes, such building and the real estate upon which it stands shall be liable therefor in the same manner; and the guardian or trustee of a minor, insane person or idiot, who permits any property under his charge to be used for gaming purposes, and the same becomes liable on account thereof, shall be liable to his ward for the amount thereof.

At the March Term, 1895, of the Court of Common Pleas for Hancock County, the defendant in error brought her action under the above section 4273, to recover from the defendants in that suit, who were named Clifford, Gassman and Marvin (the last named being this plaintiff in error), moneys alleged to have been lost by the plaintiff's husband in gambling (and won by them), between the twentieth day of March, 1893, and the nineteenth day of March, 1894. She subsequently brought another action at the September Term, 1896, in the same Court of Common Pleas, against the same parties, to recover moneys alleged to have been so lost and won between March 19 and June 19, 1894. In the first action she recovered $3,473 and costs against all three defendants, and in the second she recovered $1,300 and costs against the same defendants. Those judgments were subsequently reversed on error, by the Circuit Court, as to Marvin, and affirmed as to the other defendants.

The plaintiff below then commenced these actions in the Court of Common Pleas of Hancock County against the defendant Marvin as the owner of the premises in which the gambling was carried on, to make the judgments theretofore obtained by her against Clifford and Gassman a lien upon the building of which Marvin, the defendant, was the owner, on the ground that he knowingly permitted the same to be used by them for gambling purposes. The petition in each case stated in substance the ownership by defendant Marvin of the property where the gambling was carried on; that Clifford and Gassman carried on gambling there in violation of law; that the defendant knowingly permitted his building to be so used. The petition then alleged the recovery of a judgment by plaintiff against the defendants Clifford, Gassman and Marvin, for the amount stated in the judgment; that the action was brought pursuant to section 4273 of the Revised Statutes of Ohio, to recover from the defendants money staked and betted by plaintiff's husband, and the judgment recovered was for the amount found by the court to have been staked and betted

by plaintiff's husband and won by the defendants; that the judgment was, on error, reversed as to Marvin, but affirmed as to the other defendants, and that the judgment remained in full force as to them and was wholly unpaid; that the said games of chance, "on which said money was staked and betted and lost" by plaintiff's husband, to the defendants Clifford and Gassman, were played at the rooms in defendant Marvin's building, and while defendant knowingly permitted the same to be used by them for such purpose. The prayer was to have the judgment declared a lien on the building, and that it be sold, etc.

The defendant in his answer in each case admitted the ownership of the premises at the times alleged in the petition, and also the recovery of the judgment as stated in the petition, and that such judgment as to the defendant Marvin was reversed, and the defendant denied the other allegations in the petition. He subsequently filed an amended answer setting up the Ohio statute of limitations. The cases were tried substantially as one case in the Common Pleas and resulted in judgments in favor of the plaintiff. Upon appeal to the Circuit Court a retrial of the case was had. 24 Ohio Circuit Court Rep., *supra.* On that trial it was admitted that at the times mentioned in the petition the premises described therein were used for gambling purposes by Clifford and Gassman, "that they are the same premises in which the money described in judgment or represented by the judgments set up in the petition, are claimed to have been lost, but not admitting that plaintiff's husband, in fact, gambled with Clifford and Gassman between March 19, 1893, and June 20, 1894, it is admitted for the purposes of this action, that if he did, such gambling was done in the building and upon the premises of the defendant described in the petition." It was also conceded that the judgments were rendered against Clifford and Gassman, and that they occupied no other premises, and conducted no gambling during the periods specified in the petition except upon the premises described in the petition.

In the course of the trial the judgments against Clifford and Gassman were offered and received in evidence, under a general objection on the part of the defendant Marvin.

The plaintiff also proved, outside the record of the Clifford and Gassman judgments, by a witness called by her, the fact of the gambling and the amount lost and the place where it was lost. The witness having stated that he had lost the money to the full amount represented by the judgments, in gambling, was asked to state whether he had lost it at Clifford and Gassman's. This question was objected to at the very moment that the witness answered that he had, the objection being as follows: "Counsel on behalf of defendant Marvin objected to the above answer and moved the court to strike out so much of the answer as relates to the fact and the extent of the loss, on the ground that it is not alleged in the petition and is not an issue of fact in the case. Which motion the court overruled, to which ruling of the court the defendant then and there excepted."

The witness then again stated, under this objection, that the moneys were lost at gaming in this building and were represented by these judgments, and that the moneys were lost as stated in the petition and at Clifford and Gassman's.

There was also evidence given on the trial tending to prove that the premises were not only used by Clifford and Gassman for gambling purposes during the times mentioned in the petition, but that such user was with the knowledge of the defendant Marvin, and that he knowingly permitted the same.

Upon the trial the defendant gave no evidence.

The Circuit Court, in giving judgment for the plaintiff, found these facts, and stated, 24 Ohio Circuit Court Rep., *supra*, that in an action under section 4275, to subject the premises where the gaming was carried on and the money lost, to the payment of a judgment recovered against the winner, such judgment, when not impeached for fraud or collusion, was conclusive that the moneys lost and winnings secured, which caused the plaintiff's injury, were lost in gaming, and were won by the

defendant in the judgment; that the same were won and lost in violation of law, and that the plaintiff in consequence thereof sustained damages to the amount of the judgment; that such judgments as to these facts are not open to dispute by the owner of the premises, in an action against him under that section.

The defendant Marvin then brought the cases by writs of error to the Supreme Court of the State for review, where they were affirmed, without any opinion, but some weeks after the mandate to the court below had been issued from the Supreme Court, that court, on motion of the plaintiff in error, ordered what is termed a "journal entry" to be made, as follows:

## "Journal Entry.

"Whereupon, on motion of said plaintiff in error, William Marvin, the court order it to be certified and made part of the record of this case and of the judgment of affirmance heretofore entered herein, that this action is founded upon sections forty-two hundred and seventy-three (4273) and forty-two hundred and seventy-five (4275) of the Revised Statutes of Ohio on the subject of gaming.

"It is further certified that said plaintiff in error set up in his petition in error, asking the reversal of the judgment of the Circuit Court of Hancock County, Ohio, that said sections of said statutes and the proceedings of said Circuit Court had thereunder were repugnant to section one, article fourteen, of the amendments to the Constitution of the United States, and repugnant to article one, section nine, and article one, section ten, and section three of article three of said United States Constitution. Also that said sections of said statutes and the proceedings had thereunder were claimed and set up by plaintiff in error to be an invasion of his private right of property in violation of said Constitution and amendments. That said judgment of affirmance was in favor of the validity of said statutes and of said proceedings had thereunder, and

that they were not repugnant to any of the provisions of said Constitution or of the amendments thereto."

*Mr. George F. Pendleton* for plaintiff in error:

We concede that the decisions of the Supreme Court of Ohio both under the gaming laws above cited, and under the liquor laws so far as they have touched the points at issue here, are against us on the question of the validity of the proceedings and of the statutes. The question whether the Fourteenth Amendment is violated has seldom been before the Supreme Court of Ohio, and we claim it has not been carefully considered in any gaming or liquor case. *Binder* v. *Finkbone*, 25 Ohio St. 103; *Mullen* v. *Peck*, 49 Ohio St. 447; *Goodall* v. *Brewing Co.*, 56 Ohio St. 257; *Goodman* v. *Hailes*, 59 Ohio St. 342; *Hoss* v. *Layton*, 3 Ohio St. 353; *Cooper* v. *Rowley*, 29 Ohio St. 547; *Bellinger* v. *Griffith*, 23 Ohio St. 619.

To declare a judgment against one man a lien on another's real estate seems to us, at least, a very dangerous innovation in the law.

The right of trial by jury is secured to the citizens by the constitution and statutes of Ohio. Ohio Const. 1851, Art. 1, § 5; Rev. Stat. of Ohio, § 3130.

The police power vested in the State of Ohio as a sovereign State to safeguard the morals of the people, and to discourage the vice of gambling must be exercised within the limitations of the Constitution, Federal and state. And that to so shape proceedings as to work a forfeiture or virtual confiscation of a man's real estate for the private benefit of a third person, or any third person who suffered no personal loss from the gambling complained of is not a valid exercise of such police power. It violates the personal right of property of the individual, and invades his constitutional right of property, and is tantamount to the taking of it away from him without due process of law. Every exercise of the police power of the State, to be valid, must be reasonable. *Railroad Company* v. *Keith*, 67 Ohio St. 279, 292, and cases cited on p. 283; *State* v. *Marble*,

72 Ohio St. 21, 33; *Booth* v. *Illinois,* 184 U. S. 425; *Allgeyer* v. *Louisiana,* 165 U. S. 578, 591; *Minnesota* v. *Barber,* 136 U. S. 319; *Lawton* v. *Steele,* 152 U. S. 133; *Plessy* v. *Ferguson,* 163 U. S. 537, 550; *Wisconsin, M. & P. R. R. Co.* v. *Jacobson.* 179 U. S. 287, 301; *Holden* v. *Hardy,* 169 U. S. 366, 398; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Connelly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 558; *Dobbins* v. *Los Angeles,* 195 U. S. 223; Freund on Police Powers, § 63.

Defendant in error is the wife of the gambler who lost the money at the gambling, but the right of action by said statute is not given to her as wife of the loser, for she would have had the same statutory right to recover if she had been the wife of any other gambler. Section 4273 gives the right to sue after six months to "any person."

A volunteer, a third party to the gambling, and who lost nothing by it cannot lawfully recover from the winning gambler a judgment for the alleged losses of the losing gambler who refuses to prosecute. It would amount to taking private property of one person and giving it to another and this cannot be done. *Railroad Company* v. *Keith,* 67 Ohio St. 279, 292; *Bowman* v. *Middleton,* 1 Bay, 250; Cooley Const. Lim., 6th ed., 198; *Taylor* v. *Commissioners,* 23 Ohio St. 22, 84.

A judgment in favor of such third party and against such gambler cannot lawfully operate as a statutory lien to bind the property of the owner of the real estate upon which the gambling was done, such owner being neither a party to the gambling nor to the judgment. *Binder* v. *Finkbone,* 25 Ohio St. is clearly wrong and should not be followed.

A judgment in favor of such third party cannot lawfully be held to conclude the owner of the real estate, who is not a party thereto.

One rule of evidence should not be meted out to the winning gambler who actually pocketed the winnings, if any, and a more strenuous and illiberal rule applied to take the property of the owner from him because of his alleged knowledge and consent to have the gambling done in his rooms.

The petitions against plaintiff in error set forth no causes of action, and the demurrers thereto sustained by the lower courts ought also to have been sustained by the Supreme Court of Ohio.

The making of this judgment conclusive violated plaintiff in error's right of property under the constitutions. 2 Tiedeman, State and Federal Control, § 178, p. 871 and authorities cited.

Taking of the property from the owner as a punishment for allowing an illegal business to be conducted in some of the rooms, and giving it as a gratuity to another person, can find no justification within the protection to the owner, of his private property, guaranteed to him by the Fourteenth Amendment. Cooley Const. Lim., 6th ed., pp. 208, 707; *United States* v. *Reese*, 92 U. S. 214; *United States* v. *Cruikshank*, 92 U. S. 214; *Lawton* v. *Steele*, 152 U. S. 133; *Edson* v. *Crangle*, 62 Ohio St. 49.

No authority justifies a law, and the proceedings thereunder, that virtually confiscates a man's estate and gives the proceeds to a third person, under the circumstances of these cases. 2 Tiedeman, State and Federal Control, § 152, p. 763; *Welch* v. *Stowell*, 2 Dougl. (Mich.) 332; *State* v. *Saunders*, 66 N. H. 39.

*Mr. John Poe* for defendant in error:

As to jurisdiction.

This court would not assume jurisdiction because of the complaint that the holding of the state courts deprive plaintiff in error of any rights guaranteed to him by the Fifth, Sixth, Seventh, Eighth or Ninth Amendments referred to, for these were not intended to limit the powers of the States in respect to their own people but to operate on the national government only. *Spies* v. *Illinois*, 123 U. S. 131, 132, 166, and cases there cited.

Second. The claim here sought to be made is that the statutes of Ohio referred to are repugnant to the Constitution of the United States, but as we have seen no such claim was

set up or made in the trial courts of Ohio, it follows that this court would have no jurisdiction to entertain these cases for that reason. *Spies* v. *Illinois*, 123 U. S. 131, 181; *Brooks* v. *Missouri*, 124 U. S. 394; *French* v. *Hopkins*, 124 U. S. 524; *Powell* v. *Brunswick County*, 150 U. S. 433, 439; *Morrison* v. *Watson*, 154 U. S. 111; *Miller* v. *Texas*, 153 U. S. 535; *Sayward* v. *Denny*, 158 U. S. 180; *Giles* v. *Teasley*, 193 U. S. 146, 160.

As to *ex post facto* law: this law has practically been in force since 1824. Q. & C. Stat. 664; 3 Curwen, 2483; 63 O. L. 163; 73 O. L. 250. For distinction between *ex post facto* and retroactive law, see *Sturgis* v. *Carter*, 114 U. S. 511, 519; *Society* v. *Wheeler*, 2 Gall. 139; *Rairden* v. *Holden*, 15 Ohio St. 207.

The statute is in the nature of a police regulation and it is within the power of the State to make and enforce such a regulation. *Binder* v. *Finkbone*, 25 Ohio St. 103; Code of Iowa Liquor Sales, § 2422; *Polk County* v. *Hierb*, 37 Iowa, 361; *Lafrance* v. *Krayer*, 42 Iowa, 147; *Berthoff* v. *O'Riley*, 74 N. Y. 509; Hurd's Rev. Stat., Illinois, §§ 127, 132; Illinois Dram Shop Act, 1 St. and Cur. 973; *Bell* v. *Cassem*, 158 Illinois, 45; *Booth* v. *Illinois*, 186 Illinois, 43; *S. C.* 184 U. S. 425.

The liability to seizure attaches to the *thing*. If a man uses his property for the purposes of the violation of the laws, he loses his right to have it at all. *Dobbins* v. *Distillery*, 96 U. S. 395, 400; *The Palmyra*, 12 Wheat. 1; *United States* v. *Brig Malek Adhel*, 2 How. 40; *Munn* v. *Illinois*, 94 U.S. 114; *Schooner Ann*, 9 Cranch, 289; *The Little Charles*, Brockenbrough's Rep.; *United States* v. *Distillery*, 2 Abbott, 192; Rev. Stat., U. S., §§ 2802, 2867.

Under § 1 of the Fourteenth Amendment, the privileges and immunities not to be infringed are those of citizens of the United States, for nothing is said there of those belonging to citizens of the States. This is a remarkable omission if it was intended thereby to protect him against the legislation of his own State. *Slaughter House Case*, 16 Wall. 36, 37.

The right to a jury trial did not exist in this case; but if it did the right has been waived. No demand was made for such

trial; no objection was made to the trial court proceeding to try it, and it is too late on error in the Supreme Court of the State for the first time to complain that there should have been a jury trial. *Elithorpe* v. *Buck,* 17 Ohio St. 72; *Adler* v. *Whitbeck,* 44 Ohio St. 568; *Cockran's Heirs* v. *Loring,* 17 Ohio 409, 425; *Coal & Oil Co.* v. *Verner,* 22 Ohio St. 372; *Culver* v. *Rodgers,* 33 Ohio St. 637; *Bonewitz* v. *Bonewitz,* 50 Ohio St. 373.

This is not a case for a jury. No judgment for money is sought. It is not an action to recover money but to enforce a statutory lien. *Binder* v. *Finkbone, supra; Trout* v. *Marvin,* 62 Ohio St. 132.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The plaintiff in error seeks to reverse the judgments herein, based on the gaming statute of Ohio, because, as he insists, that statute is unconstitutional on several different grounds: First, because it is (as he avers) an unconstitutional extension of the police power of the State, resulting in the taking of the property of the plaintiff in error for the benefit of the defendant in error, or, in other words, it results in the taking of the property of the plaintiff in error without his consent for a private purpose, and that it is an invasion of his private right of property, in violation of the Federal Constitution; second, because the statute denies or does not provide for an exercise of the right of trial by jury, and, therefore, a judgment founded upon it is obtained without due process of law; third, because the judgment first obtained against the persons who actually won the money is made conclusive evidence against the plaintiff in error, of the amount of money thus lost, although he was neither a party nor privy to that judgment, as it was reversed as to him, and he was thereupon dismissed from the case.

A reference to the record does not show that any one of these questions was raised, either by the pleadings or on the trial of the case. The only evidence that any question was

raised in the Supreme Court, assailing the validity of the statute as a violation of any provision of the Federal Constitution, consists of a statement in the petition in error to the Supreme Court, that the statute was a violation of certain sections of the Federal Constitution, and in the certificate of the Supreme Court of Ohio, which that court ordered to be made a part of the record, and which is above set forth. It is a certificate from the court as distinguished from one by an individual judge.

The petition in error does not show that any question involving the Federal Constitution was actually argued or brought to the attention of the Supreme Court. It is well settled, in this court, that a certificate from a presiding judge of the state court, made after the decision of the case in that court, to the effect that a Federal question was considered and decided by the court adversely to the plaintiff in error, cannot confer jurisdiction on this court, where the record does not otherwise show it to exist; that the effect of such a certificate is to make more certain and specific what is too general and indefinite in the record itself, but it is incompetent to originate the Federal question. *Dibble* v. *Bellingham Bay Land Co.*, 163 U. S. 63; *Henkel* v. *Cincinnati*, 177 U. S. 170; *Fullerton* v. *Texas*, 196 U. S. 192. As the certificate in the case at bar was made by the court, and was ordered by it to be attached to and form part of the record itself, it is perhaps sufficient to show that some questions of a Federal nature were before that court and decided by it. It is true the certificate is quite loose in its statement as to what was the nature or character of these questions. It is certified that the plaintiff in error contended that the sections of the statute and the proceedings of the Circuit Court had thereunder were repugnant to those sections of the Constitution of the United States referred to in the certificate. By reference to them it will be seen that section 1, Article 14, contains several provisions quite distinct from, and having no relation to, each other, and the certificate does not state which one of the provisions of that section was claimed

to have been violated by the statute in question. Section 9 of Article 1 has itself seven subdivisions, and it would be difficult even to guess which particular provision the plaintiff in error claimed was violated by the statute. Section 10 of the same Article is also referred to as having been violated by the statute; also Article 3, section 3, which relates to the trial of all crimes by jury. Then there is stated to have been made by the plaintiff in error a general contention that the statute and proceedings thereunder were an invasion of his private right of property in violation of the Federal Constitution and its amendments.

A more general statement of the presentation of the Federal questions to a state court could scarcely be made. It is almost impossible to determine from such certificate what Federal question was decided in the case. We have heretofore held that an objection very similar to this raised no Federal question. *Clarke* v. *McDade*, 165 U. S. 168.

Assuming, however, that by reference to the first section of the Fourteenth Amendment, the question of the illegal extension of the police power of the State may be raised, under the claim that a judgment founded upon the statute would permit the taking of the property of the plaintiff in error without due process of law, we are of opinion that the objection is without merit. For a great many years past gambling has been very generally in this country regarded as a vice to be prevented and suppressed in the interest of the public morals and the public welfare. The power of the State to enact laws to suppress gambling cannot be doubted, and, as a means to that end, we have no doubt of its power to provide that the owner of the building in which gambling is conducted, who knowingly looks on and permits such gambling, can be made liable in his property which is thus used, to pay a judgment against those who won the money, as is provided in the statute in question. That statute, or one somewhat similar to it (without the conclusive feature of the judgment as evidence in the action to charge the property of the owner of the build-

ing where the gambling was carried on), has been in force in Ohio ever since, at least, 1831, and similar legislation is found upon that subject or upon that of the regulation of the sale of liquor, in most of the States of the Union. The plain object of this legislation is to discourage, and, if possible, prevent gambling. The liability of the owner of the building to make good the loss sustained, under the circumstances set forth in the statute, was clearly part of the means resorted to by the legislature for the purpose of suppressing the evil in the interest of the public morals and welfare. We are aware of no provision in the Federal Constitution which prevents this kind of legislation in a State for such a purpose. To say that it must be limited to a provision allowing a recovery of the money by the one who lost it, would be in effect to hold invalid all legislation providing for proceedings in the nature of *qui tam* actions. Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our Government. The right to recover the penalty or forfeiture granted by statute is frequently given to the first common informer who brings the action, although he has no interest in the matter whatever except as such informer. Bl. Com. vol. 3, chap. 9, m. p. 161; and vol. 2, chap. 29, m. p. 437; 2 Hawk. P. C., 8th ed., 368; 1 Selwyn, Law of N. P. 621; *Dozier* v. *Williams*, 47 Mississippi, 605; *Beadleston* v. *Sprague* (A. D. 1810), 6 Johns. 101; *Caswell* v. *Allen*, 10 Johns. 118; *Parker* v. *Colcord* (A. D. 1819), 2 N. H. 36; *Pike* v. *Madbury* (A. D. 1841), 12 N. H. 262; *Commonwealth* v. *Churchill* (A. D. 1809), 5 Massachusetts, 174.

Legislation giving an interest in the forfeiture to a common informer has been frequent in Congressional legislation relating to revenue cases. It is referred to in the act of March 3, 1797, 1 Stat. 506, and cases arising under its provisions are to be found in 10 Wheat. 246, *United States* v. *Morris,* and 6 Pet. 404, *McLane* v. *United States.*

And in 1861, in 12 Stat. 292, 296, sec. 11, one moiety of the forfeiture is given "to him who shall first sue for the same."

There can be no doubt of the right of the Government to give the whole instead of a moiety of the forfeiture to the informer.

Second. The contention on the part of the plaintiff in error, that the statute violates the Federal Constitution, because it does not provide for or permit trial by jury, is equally without merit. *Maxwell* v. *Dow*, 176 U. S. 581.

Third. The contention that the statute violates the first section of the Fourteenth Amendment, because under it, as is averred, a judgment against those who won the money at gambling, when not impeached for fraud or collusion, is conclusive evidence of the amount lost in an action against the owner of the property where the money was lost, who was neither party nor privy to such judgment, cannot in the state of this record be here raised. Upon the trial the defendant in error offered the judgment against Clifford and Gassman in evidence, and it was received under a general objection made by the plaintiff in error. By reference to the record it appears that the plaintiff in error on the trial conceded that the judgment was rendered against Clifford and Gassman. The formal putting in evidence of a judgment, the existence of which was conceded, can raise no question whatever. At a subsequent stage of the trial oral evidence was given outside of the record of the judgments (under objection by the plaintiff in error that there was no such issue in the case), of the amount of money that was in fact lost at play, and that it was represented by and was as large as the amount stated in the judgment offered in evidence.

One of the grounds of objection to the evidence, made by the plaintiff in error, was that neither the fact nor the extent of the loss was alleged in the petition or was an issue in the case. The petition in substance contained both averments and the answer denied them. There was such an issue, although defendant in his objection overlooked it. The ob-

jection was overruled and the evidence given. It surely cannot now be pretended that the plaintiff in error was thereby harmed. Can he now be heard to say that the statute is void because of the conclusive character which he avers is therein given to the judgment, when there was proof outside the record (given against his own objection and averment that the fact was not in issue) showing the amount of money lost? If the statute do mean that such prior judgment is conclusive, what legal interest has the plaintiff in error in the question when there is other evidence in his case, although given against his objection, that there was no issue on that fact?· The whole statute is not void, even if it mean that the judgment is conclusive, and when other evidence is given the (alleged) invalid provision is eliminated in such case, and the party who insists there is no issue as to loss, not being harmed, cannot raise the question. *Supervisors* v. *Stanley,* 105 U. S. 305, 311; *Clark* v. *Kansas City,* 176 U. S. 114, 118. The statement of the Circuit Court as to the conclusive character of a judgment was, as applied to the plaintiff in error, a mere abstraction. It does not appear even by the certificate of the Supreme Court that the plaintiff in error claimed the protection of the first section of the Fourteenth Amendment, on the ground of the alleged erroneous decision of the court below on this question, nor does it appear that the Supreme Court itself gave any opinion upon or determined it. These facts must appear in the record. *Dewey* v. *Des Moines,* 173 U. S. 193, 197; *Chapin* v. *Fye,* 179 U. S. 127. The certificate that the plaintiff in error claimed the protection of that section is fully satisfied by treating it as raising the question of the invalidity of the statute on the ground of an illegal extension of the police power, and also because it did not permit a trial by jury, and thereby, as contended, denying due process of law. These grounds we have already considered. We cannot and ought not to assume that the Supreme Court, in this state of the record, took cognizance of the question of the conclusiveness of the judgment, and the certificate does not show that the court did so. ·

In what has been said we do not wish it to be understood that this court intimates an opinion upon the alleged invalidity of the statute upon the above ground. We simply say that the plaintiff in error cannot raise that question.

The judgments of the Supreme Court of Ohio are

*Affirmed.*