## CHARLESTON FEDERAL SAVINGS & LOAN ASSOCIATION et al. v. ALDERSON, STATE TAX COMMISSIONER.

No. 400. Argued February 7, 1945.—Decided February 26, 1945.

*Mr. J. Campbell Palmer, III,* with whom *Mr. W. Elliott Nefflen* was on the brief, for appellants.

*Mr. Kenneth E. Hines,* Assistant Attorney General of West Virginia, with whom *Mr. Ira J. Partlow,* Attorney General, was on the brief, for appellee.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The question is whether the tax officials of West Virginia, who have assessed appellants' property for state taxation at its full value, have denied to appellants the equal protection of the laws, guaranteed by the Four-

teenth Amendment, by their mode of valuation, for taxation, of property of the same class belonging to other taxpayers.

. Appellants are three Federal Savings and Loan Associations, organized under federal laws, and one Building and Loan Association, organized under state laws. They filed petitions with the county court of Kanawha County, West Virginia, seeking a review and reduction of the 1941 assessment of their property for taxation by the county assessor. They alleged that their property was assessed at a proportionately higher assessment valuation than the property of other taxpayers and that such assessment was unequal and discriminatory, in contravention of the state constitution and the Fourteenth Amendment to the federal Constitution.

The county court, sitting as a Board of Review, reduced the assessments after a hearing. On appeal the Circuit Court for Kanawha County reversed the determination of the county court, and reestablished the assessments. The Supreme Court of Appeals of West Virginia, the highest court of the state, affirmed, 126 W. Va. 506, 30 S. E. 2d 513, holding that appellants had failed to make such a clear showing of the unequal effect of the tax as to justify their complaint.

The case comes here on appeal from the judgment of the Supreme Court of Appeals of West Virginia, purporting to have been taken under § 237 (a) of the Judicial Code as amended, 28 U. S. C. § 344 (a), which authorizes an appeal from the "final judgment or decree in any suit in the highest court of a State in which a decision in the suit could be had, . . . where is drawn in question the validity of a statute of any State, on the ground of its being repugnant to the Constitution, . . . and the decision is in favor of its validity." In their protests against the assessments, filed with the county court, appellants did not draw in question the validity of any statute. They alleged

only that the assessments were not uniform and equal with the assessments of other property owners and that they violated the Fourteenth Amendment. And in their petition for appeal to the Supreme Court of Appeals of West Virginia appellants contended only that the assessments denied to them equal protection of the laws in violation of the Fourteenth Amendment.

It is essential to our jurisdiction on appeal under § 237 (a) that there be an explicit and timely insistence in the state courts that a state statute, as applied, is repugnant to the federal Constitution, treaties or laws. *Loeber* v. *Schroeder*, 149 U. S. 580, 585; *Erie R. Co.* v. *Purdy*, 185 U. S. 148, 153–4; *Fullerton* v. *Texas*, 196 U. S. 192, 193; *Corkran Oil Co.* v. *Arnaudet*, 199 U. S. 182, 193; *Wall* v. *Chesapeake & Ohio R. Co.*, 256 U. S. 125, 126; *Citizens National Bank* v. *Durr*, 257 U. S. 99, 106; *Thornton* v. *Mississippi*, 323 U. S. 668; *Carter* v. *General American Life Ins. Co.*, 323 U. S. 676; *Putzier* v. *Richardson*, 323 U. S. 677. And it has long been settled that an attack upon a tax assessment or levy, such as appellants here made, on the ground that it infringes a taxpayer's federal rights, privileges, or immunities, will not sustain an appeal under § 237 (a). *Jett Bros. Co.* v. *City of Carrollton*, 252 U. S. 1; *Citizens National Bank* v. *Durr, supra; Indian Territory Illuminating Oil Co.* v. *Board of Equalization*, 287 U. S. 573; *Miller* v. *Board of County Comm'rs*, 290 U. S. 586; *Baltimore National Bank* v. *State Tax Comm'n*, 296 U. S. 538; *Irvine* v. *Spaeth*, 314 U. S. 575; *Memphis Gas Co.* v. *Beeler*, 315 U. S. 649, 650; *Commercial Credit Co.* v. *O'Brien*, 323 U. S. 665; see *Ex parte Williams*, 277 U. S. 267, 272; cf. *Reeves* v. *Williamson*, 317 U. S. 593.

Where it appears from the opinion of the state court of last resort that a state statute was drawn in question, as repugnant to the Constitution, and that the decision of the court was in favor of its validity, we have jurisdiction on appeal. For we need not inquire how and when the

question of the validity of the statute was raised when such question appears to have been actually considered and decided by that court. *Manhattan Life Ins. Co.* v. *Cohen,* 234 U. S. 123, 134; *Chicago, R. I. & P. R. Co.* v. *Perry,* 259 U. S. 548, 551; *Saltonstall* v. *Saltonstall,* 276 U. S. 260, 267; *Home Ins. Co.* v. *Dick,* 281 U. S. 397, 407; *Nickey* v. *Mississippi,* 292 U. S. 393, 394; *Whitfield* v. *Ohio,* 297 U. S. 431, 435–6. But it does not appear from the opinion of the Supreme Court of Appeals that the federal question was presented to or considered by that court. While the opinion intimates that appellants' objection was made to the administration of the statute, it nowhere indicates that they contended that, as applied, the statute was invalid as repugnant to the federal Constitution.[1]

---

[1] The President of the Supreme Court of Appeals, in allowing the appeal to this Court, wrote a memorandum opinion to the effect that the question of the validity of the statute under the Constitution was raised and decided there. Appellants urge that this indicates that the appeal is proper. While a certificate of the state court, made part of the record, to the effect that the federal question in issue was decided there is generally sufficient to sustain our jurisdiction, when it is consistent with the record, *Capital City Dairy* v. *Ohio,* 183 U. S. 238, 244; *Marvin* v. *Trout,* 199 U. S. 212, 222–4; *Cincinnati Packet Co.* v. *Bay,* 200 U. S. 179, 182; *Consolidated Turnpike* v. *Norfolk & O. V. R. Co.,* 228 U. S. 596, 599; *Whitney* v. *California,* 274 U. S. 357, 360–2; *Honeyman* v. *Hanan,* 300 U. S. 14, 22, a certificate to the same effect by the presiding justice of the state appellate court does not suffice, although it may serve to interpret indefinite or ambiguous evidence in the record, relied upon to show that the federal question was raised. *Felix* v. *Scharnweber,* 125 U. S. 54, 59, 60; *Henkel* v. *Cincinnati,* 177 U. S. 170; *Gulf & Ship Island R. Co.* v. *Hewes,* 183 U. S. 66; *Home for Incurables* v. *New York,* 187 U. S. 155, 158; *Fullerton* v. *Texas,* 196 U. S. 192, 194; *Seaboard Air Line R. Co.* v. *Duvall,* 225 U. S. 477, 481; *Connecticut General Life Ins. Co.* v. *Johnson,* 296 U. S. 535; *Purcell* v. *New York Central R. Co.,* 296 U. S. 545; *Honeyman* v. *Hanan, supra,* 18, and cases cited; *Lisenba* v. *California,* 314 U. S. 219. The memorandum of the President of the West Virginia court was not sufficient of itself to establish that

Appellants in their assignment of errors in this Court have failed to attack the state statute as repugnant to the Constitution, stating only that the finding and judgment below sustaining the assessment violate the equal protection clause. Even where the federal question has been properly raised below, an appeal under § 237 (a) may be dismissed where appellants fail to attack a statute explicitly in their assignments of error here. *Cady* v. *Georgia,* 323 U. S. 676; cf. *Herbring* v. *Lee,* 280 U. S. 111, 117; *Seaboard Air Line R. Co.* v. *Watson,* 287 U. S. 86, 91; *Flournoy* v. *Wiener,* 321 U. S. 253.

For these reasons we grant appellee's motion to dismiss the appeal. Treating the papers on which the appeal was allowed as a petition for writ of certiorari, as required by § 237 (c) of the Judicial Code, as amended, 28 U. S. C. § 344 (c), certiorari is granted, since appellants have properly attacked the validity of the assessments under the equal protection clause of the Fourteenth Amendment, and we proceed to consider the merits.

Section 14 (a) of Chapter 11, Article III of the West Virginia Code of 1941, provides that "the capital of every building and loan association and federal savings and loan association, as represented or evidenced by the investment shares and investment accounts in such association, shall be assessed at its true and actual value. . . . The real and actual value of such capital, represented by the market value of such investment shares and investment accounts as aforesaid, shall be ascertained according to the best information which the assessor may be able to obtain . . ."

Section 1 of the same chapter and article provides: "All property shall be assessed annually as of the first day of

appellants attacked a statute below, nor does the record contain any evidence which could be relied upon to show that the validity of a statute was drawn in question.

January at its true and actual value; . . ." And Article 10, § 1 of the Constitution of West Virginia provides: ". . . taxation shall be equal and uniform throughout the State, and all property, both real and personal, shall be taxed in proportion to its value to be ascertained as directed by law. No one species of property from which a tax may be collected shall be taxed higher than any other species of property of equal value." This section of the constitution also provides for the division of all taxable property into four classes, with a prescribed limitation on the amount of tax which may be levied upon each class. Class I consists of "personal property employed exclusively in agriculture, . . . products of agriculture . . ., including livestock, while owned by the producer" and includes "money, notes, bonds, bills and accounts receivable, stocks and other similar intangible personal property," which is the class of property for which appellants are taxed.

Notwithstanding these provisions of the constitution and statutes of the state, it appears from the evidence, and the state Court of Appeals found, that in 1941, and since, the assessor of Kanawha County, following the instructions of the state tax commissioner, employed a different method in the valuation and assessment of the property of building and loan associations and federal savings and loan associations, including appellants, from that employed in assessing Class I property of other taxpayers. It is this difference in the mode of assessing the property of different taxpayers which petitioners contend has resulted in taxing the property of appellants at its full value and like property of other taxpayers at less than its full valuation, in violation of the equal protection clause.

It appears from the record that the assessor in 1941 for the first time followed the uniform practice of assessing the capital of building and loan associations and federal

loan associations as evidenced by their investment shares and investment accounts, constituting their Class I intangibles, at their full value. But it also appears that in assessing other taxpayers on their Class I property, the assessor varied his method of assessment as to different types of property included in the class. As to them he valued money at 100%, bonds, notes and accounts receivable, except installment accounts, at about 70% of their face value and installment accounts at 65% of their face value. Livestock and agricultural products were valued at approximately 50% of their "purchase value." The accounts receivable and notes of small loan companies were assessed at about 85% of their face value. It does not appear how commercial banks and trust companies were assessed, but for purposes of decision the state court assumed that their Class I intangibles were assessed at their full face value.

The Court of Appeals found that small loan companies and other taxpayers whose Class I intangibles were taxed at less than their face value are engaged in a business different from and involving a greater risk than that in which building and loan associations and federal savings and loan associations are engaged. It found that there was a basis for the discount from face value employed in assessing notes and accounts of small loan associations, which was lacking in the assessment of the higher grade securities, held by building and loan associations and federal savings and loan associations, whose investments are generally more carefully made and better secured than those of other classes of taxpayers.

The court concluded that the method of assessment and valuation employed was not adopted with the purpose of taxing some but not all Class I property at less than its true value, but as a means of arriving at its true value. It said: "We do not have a case where the true and actual value was ascertained and a discount allowed from that

value; but rather a case where the discount was allowed, particularly as to intangibles, in an effort to reach the true value." While the court thought that this method of assessment might in some instances be an erroneous performance of the duties of the assessor, it held that a mere error of judgment as to the mode of assessment adopted was not sufficient to establish an unlawful discrimination "where the plan, though imperfect, is adopted in a good faith effort to secure fair and equitable assessment, and equality and uniformity in taxation."

Appellants argue that denial to them of the equal protection of the laws is established by the proof of the assessor's discrimination in his mode of assessment of the same kind of Class I property belonging to different taxpayers, and that this discrimination is shown to be "intentional and systematic." But this argument overlooks the well established rule that the constitutional prohibition applies only to taxation which in fact bears unequally on persons or property of the same class and that mere differences in modes of assessment do not deny equal protection unless they are shown to produce such inequality. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 236; *Home Ins. Co.* v. *New York,* 134 U. S. 594, 600; *Adams Express Co.* v. *Ohio,* 165 U. S. 194, 229; *Michigan Central R. Co.* v. *Powers,* 201 U. S. 245, 298–300; cf. *Hendrick* v. *Maryland,* 235 U. S. 610; *General American Tank Car Corp.* v. *Day,* 270 U. S. 367; *Interstate Busses Corp.* v. *Holyoke Street R. Co.,* 273 U. S. 45, 51; *Interstate Busses Corp.* v. *Blodgett,* 276 U. S. 245, 251. Nor does the equal protection clause prohibit inequality in taxation which results from mere mistake or error in judgment of tax officials, *Pittsburgh, C., C. & St. L. R. Co.* v. *Backus,* 154 U. S. 421, 435; *Coulter* v. *Louisville & N. R. Co.,* 196 U. S. 599, 609; *Brooklyn City R. Co.* v. *New York,* 199 U. S. 48, 52; *Sioux City Bridge* v. *Dakota County,* 260

U. S. 441, 447; *Southern R. Co.* v. *Watts,* 260 U. S. 519, 527; *Baker* v. *Druesedow,* 263 U. S. 137, 142; *Cumberland Coal Co.* v. *Board,* 284 U. S. 23, 25; *Rowley* v. *Chicago & Northwestern R. Co.,* 293 U. S. 102, 111; *Great Northern R. Co.* v. *Weeks,* 297 U. S. 135, 139; or which is not shown to be the result of intentional or systematic undervaluation of some but not all of the taxed property in a single class. *New York* v. *Barker,* 179 U. S. 279, 284, 285; *Coulter* v. *Louisville & N. R. Co., supra; Chicago, B. & Q. R. Co.* v. *Babcock,* 204 U. S. 585, 597; *Sunday Lake Iron Co.* v. *Wakefield,* 247 U. S. 350, 353; *Sioux City Bridge* v. *Dakota County, supra,* 447; *Southern R. Co.* v. *Watts, supra; Snowden* v. *Hughes,* 321 U. S. 1, 9.

In all these respects appellants have the burden of establishing the unconstitutionality of the assessments which they assail, *Sunday Lake Iron Co.* v. *Wakefield, supra,* 353, and cases cited; *Southern R. Co.* v. *Watts, supra,* 526; *Chicago G. W. R. Co.* v. *Kendall,* 266 U. S. 94, 99; *Lawrence* v. *State Tax Comm'n,* 286 U. S. 276, 284; *Great Northern R. Co.* v. *Weeks, supra,* 139; *Snowden* v. *Hughes, supra,* 9; and they have failed to sustain that burden.

It is plain that the Fourteenth Amendment does not preclude a state from placing notes and receivables in a different class from personal property used in agriculture and the products of agriculture, including livestock, and taxing the two classes differently, even though the state places them in a single class for other purposes of taxation. *Bell's Gap R. Co.* v. *Pennsylvania, supra,* 237; *Home Ins. Co.* v. *New York, supra,* 606; *Coulter* v. *Louisville & N. R. Co., supra,* 608–9; *Klein* v. *Board of Supervisors,* 282 U. S. 19.

As we have said, the state court concluded that the discount from face value allowed in assessing Class I intangibles of various taxpayers, other than appellants, was for

the purpose of arriving at the true value of the property assessed. In view of that conclusion and in the absence of any finding or persuasive evidence to the contrary, we cannot say that the allowance of the discounts has in fact resulted in the actual assessment of the intangibles of taxpayers, other than appellants, at less than their true value. Nor can we say that the discounts which were denied to appellants on their Class I intangibles for the first time in 1941 were intended to produce inequality in taxation, or were part of a systematic effort to accomplish that end, or in fact were more than errors in judgment, if that, in the administration of the tax laws.

We find no persuasive evidence in the record and are pointed to none from which it could be inferred that the value of Class I intangibles of small loan companies and other taxpayers in West Virginia, not subject to the same supervision as appellants, is not generally less than face value, or that the discount allowed by the assessor on the intangibles of any given taxpayer or class of taxpayers has in fact resulted in an assessment at less than their true value. It follows that appellants have failed to sustain the burden of showing that the assessments are unconstitutionally discriminatory, and the judgment must be

*Affirmed.*

MR. JUSTICE BLACK is of the opinion that the appeal raises no substantial federal question and therefore concurs in its dismissal. For the same reason he thinks certiorari should be denied.

MR. JUSTICE ROBERTS.

I am of opinion the judgment should be reversed. I think the evidence is not only without contradiction but is persuasive that persons and corporations whose circumstances are precisely similar to those of the complaining taxpayers, and persons competing in the investment

field with them and holding similar security, have been benefited by assessments purposely intended to discriminate in their favor, and against the complainants. I think the decision below plainly runs counter to decisions of this court. *Cumberland Coal Co.* v. *Board of Revision,* 284 U. S. 23; *Iowa-Des Moines National Bank* v. *Bennett,* 284 U. S. 239, 245; *Concordia Fire Ins. Co.* v. *Illinois,* 292 U. S. 535.